UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| IN RE: ) | |
| ) | |
| JOSEPH PREBUL ) | |
| ) | |
| Debtor ) | |
| _____ ) | |
| ) | No. 1:11-CV-214 |
| JOSEPH PREBUL, *et al.*, ) | |
| ) | Judge Curtis L. Collier |
| Appellants, ) | |
| ) | |
| v. ) | |
| ) | |
| ) | |
| STEVEN BENSUSAN, *et al.*, ) | |
| ) | |
| Appellees. ) | |

## MEMORANDUM

Before the Court is an appeal from an order of the United States Bankruptcy Court for the Eastern District of Tennessee. The bankruptcy court dismissed the Second Amended Complaint filed by Appellants James Paris as trustee for Joseph Prebul ("Prebul"), Prebul Chrysler Jeep Dodge, LLC, and Carolex, LLC ("Carolex") (collectively "Appellants") against Appellees Steven Bensusan, Alliance Investments Group, LLC, 117 Seventh Avenue South Property Co., L.P. ("117 Seventh"), TSE Group, LLC ("TSE"), Danny Bensusan, DBS International, LLC ("DBS"), and Gary D. Chazen ("Chazen") (collectively "Appellees"). After giving careful consideration to the parties' arguments, relevant case law, and the evidentiary record, the Court **AFFIRMS** the judgment of the bankruptcy court.

**I.    RELEVANT FACTS AND PROCEDURAL HISTORY**

Beginning in 1995, Danny Bensusan or related entities[1] began making loans to Prebul Jeep, Inc. ("Prebul Jeep")[2] or Prebul himself. Danny Bensusan and these entities continued loaning Prebul Jeep funds over the next decade. Danny Bensusan requested repayment on these accounts in July 2008, but Prebul Jeep and Prebul himself were unable to pay the full balance of the outstanding loans. Prebul executed a promissory note on August 1, 2008 for $7,641,362.48 in favor of Danny Bensusan. After the note was executed, Danny Bensusan attempted to collect on the balance or receive security for the note. Prebul claimed these efforts included "implied and express threats of criminal prosecution and incarceration." In November 2008, Danny Bensusan proposed a Forbearance Agreement which required Prebul to transfer assets or proceeds to Danny Bensusan, including Prebul's stake in TSE. Prebul refused to execute the agreement.

In 2009, Danny Bensusan filed an action in the circuit court of Hamilton County, Tennessee against Prebul and others alleging fraud, conspiracy to defraud and convert assets, breach of fiduciary duty, negligent misrepresentation and supervision, conversion, breach of contract, and promissory estoppel. These claims were related to funds loaned to Prebul. The case was removed to the Eastern District of Tennessee briefly, but was remanded due to incomplete diversity. Subsequently, the case was removed to the Bankruptcy Court of the Eastern District of Tennessee. Concurrent with this action, Appellant pleaded guilty to an indictment in the United States District Court for the Southern District of New York for theft of funds in the custody of a bank in violation

---

[1] The promissory notes attached to the SAC list the parties as 117 Seventh and Prebul Jeep. The complaint broadly claims Danny Bensusan "and/or persons or entities associated with Danny Bensusan" loaned funds during this time period.

[2] Prebul Jeep, Inc. is distinct from Prebul Chrysler Jeep Dodge, LLC and was not a party to the bankruptcy court proceeding or this appeal.

of 18 U.S.C. §§ 2 and 2113(b), and agreed to forfeit $6,783,082.82. Danny Bensusan was listed as a victim to Prebul's criminal offense.

After removal to the bankruptcy court, Danny Bensusan voluntarily dismissed his claims. However, the counterclaims of Appellants remained as asserted in the Second Amended Complaint ("SAC"). Count one of the SAC alleged that "loans" between Danny Bensusan or related entities and Prebul and Prebul Jeep were no longer enforceable because the August 2008 promissory note Prebul executed in favor of Danny Bensusan constituted a novation. Counts two through four alleged Danny Bensusan's prepetition actions constituted civil conspiracies to commit extortion, procure breach of contract, and intentionally interfere with business relationships. Count five alleged TSE, which consists of Prebul, Chazen, and DBS, engaged in minority oppression, and the majority interest holders breached their fiduciary duties to Prebul. Count six sought to dissolve TSE under New York law due to Prebul's bankruptcy filing.

Appellees filed a motion to dismiss the SAC on the grounds that each of the six counts failed to state a cause of action upon which relief could be granted. The bankruptcy court granted the motion to dismiss on July 19, 2011. The court concluded count one failed because Appellants did not allege facts sufficient to establish novation; namely, Appellants did not allege facts showing all parties intended the August 2008 promissory note to extinguish prior obligations. Count two failed because Appellants did not allege a resulting injury from the extortion. Count three failed because there were no allegations Appellees intended to induce a breach, no facts alleged that establish malice, no allegation of an actual breach, and no facts that showed causation or harm. Count four failed because Appellants did not allege intent to interfere, and did not allege causation or assert damages. Count five failed because, of the few actions that could be brought directly rather than

3

Case 1:11-cv-00214   Document 31   Filed 11/30/12   Page 3 of 20   PageID #: 2126

as a derivative claim, the bare allegations alleged in the SAC were insufficient to state a claim under the *Twombly* standard. Finally, count six failed because the dissolution provision of the New York Limited Liability Company Law was an *ipso facto* clause in violation of § 541(c)(1)(B) of the Bankruptcy Code. Appellants appealed to this court seeking review of the bankruptcy court's decision.

## II.     STANDARD OF REVIEW

The Court has appellate jurisdiction to hear appeals from final judgments and orders of the bankruptcy court pursuant to 28 U.S.C. § 158(a)(1). The bankruptcy court's factual findings are reviewed for clear error and its conclusions of law are reviewed *de novo*. *In re Behlke*, 358 F.3d 429, 433 (6th Cir. 2004). A finding of fact is considered clearly erroneous if "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Heights Cmty. Cong. v. Hilltop Realty, Inc.*, 774 F.2d 135, 140 (6th Cir. 1985). "[D]ue regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses." Fed. R. Bankr. P. 8013; *see Anderson v. City of Bessemer City*, 470 U.S. 564, 575 (1985) ("When findings are based on determinations regarding the credibility of witnesses, [the Federal Rules of Bankruptcy Procedure require] even greater deference to the trial court's findings . . . .").

A bankruptcy court's decision to dismiss a case is generally reviewed for abuse of discretion. *In re DSC, Ltd.*, 486 F.3d 940, 944 (6th Cir. 2007). Abuse of discretion is also the proper standard for any equitable determinations of the bankruptcy court. *Mayor of Baltimore v. W. Va. (In re Eagle-Picher Indus., Inc.)*, 285 F.3d 522, 527 (6th Cir. 2002).

4

## III. RELEVANT LAW & DISCUSSION

### A. Dismissal pursuant to Fed. R. Civ. P. 12(b)(6)

Appellants argue the bankruptcy court improperly applied Rule 12(b)(6) to their claims. Namely, they assert the bankruptcy court ignored their "well-pleaded factual allegations" and instead focused on their legal conclusions. Because each claim requires Appellants allege different elements, the Court will address each in turn.

A motion to dismiss filed pursuant to Rule 12(b)(6) "allow[s] a defendant to test whether, as a matter of law, [a] plaintiff is entitled to legal relief even if everything alleged in the complaint is true." *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). The complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009). The Court must "construe the complaint in the light most favorable to the plaintiff" and "accept all factual allegations as true." *Paige v. Coyner*, 614 F.3d 273, 277 (2010) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). However, bare assertions of legal conclusions are insufficient as well as "threadbare recitals" of the elements of a cause of action. *Iqbal*, 556 U.S. at 678.

A plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Paige v. Coyner*, 614 F.3d 273, 277 (2010) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). A claim is plausible on its face if the "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. If a genuine issue of material fact exists, the motion to dismiss should be denied. *Hollins v. Methodist Healthcare, Inc.*, 474 F.3d 223, 225 (6th Cir. 2007), *abrogated on other grounds by Hosanna-Tabor Evangelical Lutheran Church & School v. Equal Emp't Opportunity Comm'n*, 132

5

S. Ct. 694 (2012).

### 1. Declaratory Judgment

Appellants argue the SAC sufficiently pleaded facts that support their claim for a judgment declaring they are not liable for all loans made by Danny Bensusan or related entities prior to the August 2008 promissory note. Appellants claim the note was a novation that discharged prior obligations. The bankruptcy court concluded the complaint failed to allege facts showing all parties agreed to the new contract or intended the promissory note to extinguish prior obligations (Court File No. 17-26, p. 7-8). Further, the court noted the contract was only signed by Prebul, rather than Prebul Jeep, and there was no allegation Prebul Jeep sought novation. Finally, the court noted the promissory note itself fails to mention prior obligations, and while courts can imply novation from circumstances, no facts were alleged sufficient to demonstrate novation.

As an initial matter, the parties dispute whether Tennessee or New York law governs the promissory note. Appellants argue New York law governs because the promissory note contains a provision stating "[t]his note shall be governed by and construed in accordance with the laws of the State of New York." Appellees contend Tennessee law governs (Court File No. 27, p. 7), but do not provide reasons for their position. The bankruptcy court, for its part, did not explicitly decide the issue, because it concluded Appellants failed to state a claim regardless of which state's law applies.

Although the bankruptcy court is correct that Appellants likely fail under either state's laws, the Court will apply New York law when interpreting the promissory note. Tennessee applies the *lex loci contractus* rule; that is, "the construction and validity of a contract are governed by the place where the contract was made, absent contrary intent." *Dryair 2000, Inc. v. Blue Winged Olive,*

6

*L.L.C.*, No. 1:07-CV-22, 2009 WL 311132, at *5 (E.D. Tenn. Feb. 6, 2009) (citing *Ohio Casualty Ins. Co. v. Travelers Indem. Co.*, 493 S.W.2d 465, 466 (Tenn. 1973)); *see also Nordahl v. Studer Revox America, Inc.*, 78 F.3d 585, at *4 (6th Cir. 1996) (Unpublished) (quoting *Deaton v. Vise*, 210 S.W.2d 665, 668 (Tenn. 1948)) ("[A] contract is presumed to be made with reference to the law of the place where it was entered into unless it appears it was entered into in good faith with reference to the law of some other state."). "The parties' intentions in this respect are 'to be gathered from the terms of the instruments and all of the attending circumstances.'" *Mackey v. Judy's Foods, Inc.*, 654 F. Supp. 1465, 1470 (M.D. Tenn. 1987) (quoting *Ohio Casualty Ins. Co.*, 493 S.W.2d at 467). Because the promissory note here unequivocally states it will be governed by the law of New York, Tennessee courts would apply New York law to determine if the promissory note constituted a novation. *Nordahl*, 78 F.3d 585, at *4 ("The pertinent consideration [under Tennessee law] is whether a contract was 'entered into in good faith with reference to the law of some other state,' that is, whether it was made 'with a view' to another state.").

"Under New York law, in order to demonstrate a novation, four elements must be present: '(1) a previously valid obligation; (2) agreement of all parties to a new contract; (3) extinguishment of the old contract; and (4) a valid new contract.'" *In re Balfour MacLaine Intern. Ltd*, 85 F.3d 68, 82-83 (2d Cir. 1996) (quoting *Healey v. Healey*, 190 A.D.2d 965, 966 (N.Y. App. Div. 1993)). Accordingly, in order to survive a motion to dismiss, Appellants must allege facts sufficient to support each of these elements. Here, Appellants have failed to allege facts sufficient to show novation. The SAC merely claims that "as a result" of Prebul and Prebul Jeep's inability to pay the prior loans, and "at the request of Danny Bensusan," Prebul executed the August 2008 promissory note. These allegations are insufficient to show an agreement regarding the previous obligations.

7

*See In re Cohen*, 422 B.R. 350, 373 (E.D.N.Y. 2010) ("Because a novation has the effect of extinguishing the prior contract between the parties, the existence of a novation 'must never be presumed,' and the party asserting the novation's existence has the burden of proving that the subsequent agreement was intended as a complete substitute for the parties' prior agreements.") (citations omitted). Moreover, the promissory note itself does not reference any of the prior agreements. *See Ventricelli v. DeGennaro*, 221 A.D.2d 231, 232 (N.Y. 1995) (affirming a lower court finding that a novation was not established where the contract did not mention past promissory notes).

Further, Appellants have failed to establish the August 2008 promissory note was an agreement of all parties to a new contract. The promissory note is only signed by Danny Bensusan and Prebul, whereas many of the prior loans were made between Danny Bensusan or a related entity and Prebul Jeep. Indeed, the two loans whose documents were attached to and detailed in the SAC were between 117 Seventh and Prebul Jeep, neither of which was party to the August 2008 promissory note. Accordingly, Appellants alleged no facts on which the Court could find an "agreement of all parties to a new contract." *In re Balfour*, 85 F.3d at 82-83; *see also Raymond v. Marks*, 116 F.3d 466, at *2 (2d Cir. 1997) (Unpublished) ("The underlying principle is that novation requires the consent of all parties to substitute one obligation or agreement for another.").

Realizing the insufficiency of the SAC, Appellants contend, under New York law, the "consent to enter into [a] new contract may be implied by conduct" (Court File No. 7, p. 8) (citing *Schloss Bros. & Co. v. Bennett*, 183 N.E. 376, 378 (N.Y. 1932); *In re Estate of Anderson*, 462 N.Y.S.2d 589, 594 (Sur. Ct. 1983)). Appellants fault the bankruptcy court for failing to account for the SAC's allegations of Danny Bensusan's collection efforts, including the proposed Forbearance

8

Agreement, which Appellants contend shows Danny Bensusan believed the promissory note substituted Prebul's liability for Prebul Jeep's liability. These factual allegations, say Appellants, demonstrate implied consent to the novation by conduct. Appellants conclude the bankruptcy court erred when it found the factual allegations insufficient, and relegated its discussion of these facts to a footnote (Court File No. 17-26, p. 8 n.1).

The bankruptcy court, however, was correct that "[w]hile courts may imply a novation from the circumstances surrounding a later contract," the collection efforts alleged by Appellants "were also directed at the allegedly 'discharged' obligations and thus provide no support for implying an intention to create a novation" (Court File No. 17-26, p. 8 n.1). Indeed, the SAC claims Danny Bensusan, as a part of these efforts, sought "to re-characterize the loans that commenced in or around 1995 as 'investments' rather than loans," and he requested documents "evidencing '. . . the trail showing [the] path of the loans[,]' and 'year end financials for all dealerships and LLCs since the loans were made'" (Court File No. 17-12, SAC, p. 8). The SAC also claims the Forbearance Agreement "falsely recited that the above-referenced loans were 'investment arrangements' that were to have been held 'in trust and to accrue interest'" (Court File No. 17-12, SAC, p. 10). Far from alleging facts sufficient to find an implied novation, the alleged facts demonstrate Danny Bensusan did not consider the prior loans subsumed by the August 2008 promissory note. If Danny Bensusan believed the promissory note was a novation, there would have been no controversy after the promissory note was signed whether the prior agreements constituted loans.

Appellants failed to allege facts showing that the August 2008 promissory note constituted a novation, and that the conduct surrounding the promissory supports a finding of implied consent. The bankruptcy court appropriately considered Appellants' allegations insufficient to establish

9

novation, and appropriately dismissed the claim under Rule 12(b)(6).

### 2. Civil conspiracy to extort

Appellants argue the bankruptcy court improperly dismissed their claim of civil conspiracy to extort. The bankruptcy court concluded Tennessee does not recognize a cause of action for civil extortion. *See Perry v. Conley*, No. 02A019812-cv-00369, 1999 WL 270430, at *4 (Tenn. Ct. App. May 5, 1999) ("We know of no statutory or common law authority-except in states where statutes provide for civil penalties for crimes of extortion-which would allow [the plaintiff] to recover damages for 'extortion.'"). However, the bankruptcy court considered the claim because at least one Tennessee court has allowed a plaintiff to proceed on a claim of civil conspiracy to extort. *Valafie v. Owens*, No. 92C-1642, 1996 WL 502133, at *7 n.3 (Tenn. Ct. App. Sept. 6, 1996). That case has also been acknowledged by prior a decision in this district. *Ward v. Knox County Bd. of Educ.*, No. 3:11-CV-438, 2012 WL 1409285 (E.D. Tenn. April 23, 2012) (citing *Perry*, 1999 WL 270430, at *4, and the Bankruptcy court's opinion in this case, *In re Prebul*, No. 09-14010, 2011 WL 2947045 (Bankr. E.D. Tenn. July 19, 2011)). However, *Valafie* conflicts with clearly established Tennessee law, recognized by the Tennessee Supreme Court and decisions in this district, that "under Tennessee law civil conspiracy requires a predicate tort allegedly committed pursuant to the conspiracy." *Morgan v. Brush Wellman, Inc.*, 165 F. Supp. 2d 704, 721 (E.D. Tenn. 2001) (citing *Tennessee Publishing Company v. Fitzhugh*, 52 S.W.2d 157 (1932)); *see also Forrester v. Stockstill*, 869 S.W.2d 328, 330 (Tenn. 1994) ("[I]t cannot be that a conspiracy to do a thing is actionable where the thing itself would not be.") (quoting *Felts v. Paradise*, 158 S.W.2d 727 (1949)). To the extent *Valafie* recognized a civil conspiracy to extort, it conflicts with decisions of the Tennessee Supreme Court. Accordingly, the Court concludes Appellants' claim of civil conspiracy to extort

10

fails because there is no tort of extortion recognized in Tennessee.

### 3. Civil conspiracy to procure breach of contract

The bankruptcy court concluded Appellants failed to plead facts supporting a claim of civil conspiracy to procure breach of contract. Section 47-50-109 of the Tennessee Code, which codifies the common law procurement of breach of contract claim, requires a plaintiff prove the following elements: "1) there must be a legal contract; 2) the wrongdoer must have knowledge of the existence of the contract; 3) there must be an intention to induce its breach; 4) the wrongdoer must have acted maliciously; 5) there must be a breach of the contract; 6) the act complained of must be the proximate cause of the breach of the contract; and, 7) there must have been damages resulting from the breach of the contract." *Myers v. Pickering Firm, Inc.*, 959 S.W.2d 152, 158 (Tenn. Ct. App. 1997). The bankruptcy court concluded Appellants did not allege facts showing Appellees intended to create a breach, they acted with malice, an actual breach of contract, or causation and harm (Court File No. 1-2, p. 12). Appellants merely alleged transfers were sought and never made.

Appellants argue the elements were met, because the SAC alleged Appellants had contracts with lenders and other third parties, Appellees were aware of these contracts, the behavior alleged in the SAC showed malice on the part of Appellees, and the allegation "lenders are claiming [Appellants] have breached contracts" satisfies the breach, causation, and damage elements. However, the bankruptcy court was correct the allegation is "rife with deficiencies" (Court File No. 1-2, p. 12). Regardless of whether Appellees were aware of contracts that might be affected, nothing in the SAC suggests they intended those contracts be breached; rather, Appellees were focused on collecting debts. More to the point, the SAC claims Prebul did not comply with Appellees' demands, and therefore it fails to establish causation or damages. Although Appellants claim

11

Appellees "procured the filing of the Sealed Complaint" leading to Prebul's conviction, nothing in the SAC suggests this was the proximate cause of the breach. In fact, the SAC does not claim an actual breach occurred, but merely claims "[o]ther lenders are claiming" contracts were breached. Appellants' allegation is internally contradictory: Appellees' demands were not complied with but procured a breach of contract, which itself was not properly alleged. As such, the claim is implausible and must be dismissed.

### 4. Civil conspiracy to intentionally interfere with business relationships

The bankruptcy court also dismissed Appellants' claim of civil conspiracy to intentionally interfere with business relationships. In Tennessee, the tort of intentional interference with a business relationship will lie only if the plaintiff can show "(1) an existing business relationship with specific third parties or a prospective relationship with an identifiable class of third persons; (2) the defendant's knowledge of that relationship and not a mere awareness of the plaintiff's business dealings with others in general; (3) the defendant's intent to cause the breach or termination of the business relationship; (4) the defendant's improper motive or improper means, and finally, (5) damages resulting from the tortious interference." *Trau-Med of America, Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 701 (Tenn. 2002) (citation and emphasis omitted). The bankruptcy court dismissed this claim for the same reasons it dismissed the procure breach of contract claim: Appellants failed to adequately allege intent to interfere and, because Appellants did not enter into the Forbearance Agreement, they failed to allege causation and damages. Appellants, however, again contend the collection efforts and Forbearance Agreement show intent to interfere with other business relationships and the subsequent civil and criminal proceedings establish causation and damage.

The bankruptcy court correctly dismissed Appellants' claim. Nothing in the SAC alleges

12

intent to interfere specifically with any business relationships. Appellants alleged Appellees "knew" the transfers they sought would interfere with other business relationships. However, knowledge and intent are two separate elements of the interference with business relationships tort. *See Trau-Med*, 71 S.W.3d at 701. Accordingly, there is nothing alleged in the SAC that suggests Appellees intended to interfere with Appellants' business relationships. Rather, the collection efforts suggest Appellees were seeking security for large amounts of money they had committed to Appellants, and mentioned financial agreements between Appellants and other parties as evidence their committed funds lacked security. Further, as has been a common problem for Appellants, they did not sign the Forbearance Agreement and thus cannot show causation or damages. The civil and criminal proceedings do not satisfy this prong either, because there is no allegation in the SAC that either proceeding was initiated with intent to interfere with Prebul's business relationships. This claim was properly dismissed.

### B. Minority oppression claim

TSE, a limited liability company in which Prebul has an ownership interest, operates a B.B. King's establishment in New York City. Count five of the SAC alleges Appellees TSE, DBS, Steven Bensusan, and Danny Bensusan violated their fiduciary obligation to minority members, failed to act in good faith, improperly profited financially, and received improper benefits. Namely, Appellants allege Appellees (1) improperly charged unrelated expenses to TSE, (2) improperly employed family members as employees, (3) distributed funds to owners infrequently, (4) improperly elevated payments to Danny Bensusan and other family members, (5) maintained inadequate records, financial reports, and disclosures to minority members, and (6) failed to pursue lucrative business opportunities.

13

The bankruptcy court dismissed the claims in count five asserted against Steven and Danny Bensusan because it did not appear either was a member of TSE. Appellants did not contest this finding in their briefs. The bankruptcy court also concluded most of the allegations of wrongdoing listed above were not directed at minority members but were directed at TSE itself. Accordingly, the court concluded, claims regarding improperly charged expenses, nepotism, inadequate recordkeeping, and failure to pursue business opportunities must be brought in a derivative suit rather than individually.

Appellants argue, under New York law, a member of an LLC can bring direct claims, even though he may bring derivative claims too. However, in *Tzolis v. Wolff*, 884 N.E.2d 1005 (N.Y. 2008), the Court of Appeals settled an issue that had split lower courts in New York. There was no statutory provision in New York recognizing derivative suit rights in LLCs, but the court extended the remedy to LLCs because leaving injured members without redress "would lead to 'an intolerable grievance.'" *Id.* at 1007. Without derivative suits, members who were harmed by their fiduciaries had no redress for their grievances. Acknowledging that some lower courts had held "members of an LLC have their own, direct claims against fiduciaries," the court rejected such actions, stating they "blur[red], if not eras[ed], the traditional line between direct and derivative claims." *Id.* 1007-08. The court further noted, "[s]ubstituting direct remedies of LLC members for the old-fashioned derivative suit . . . raises unanswered questions. . . . [W]e will not readily conclude that the Legislature intended to set us on this uncharted path." *Id.* at 1008. After *Tzolis*, the traditional line between direct and derivative suits extends to LLCs and their members. *See Bartfield v. Murphy*, 578 F. Supp. 2d 638, 646 (S.D.N.Y. 2008).

Appellants claim, however, an unpublished trial court case, *RCGLV Maspeth LLC v.*

*Maspeth Properties LLC*, 910 N.Y.S.2d 408, at *3 (N.Y. Sup. Ct. Mar. 25, 2010), establishes that members of an LLC have a choice between derivative and direct suits. The plaintiff in *RCGLV* was bringing suit in its own right as a secured party and as a party to the operating agreement at issue. *Id.* The claims being asserted, then, were not derivative claims, and *RCGLV* does not impeach the Court's understanding of *Tzolis*, which extends the traditional division of direct and derivative claims to New York LLCs. Accordingly, the bankruptcy court was correct that many of the asserted claims must be raised as derivative claims and should be dismissed. Those include improper charges, nepotism in hiring, improper payments, inadequate recordkeeping and financial reporting, and refusing to explore possible business interests (Court File No. 17-12, SAC, pp. 15-16). *See Abrams v. Donati*, 489 N.E.2d 751, 752 (N.Y. 1985) ("[A]llegations of mismanagement or diversion of assets by officers or directors to their own enrichment, without more, plead a wrong to the corporation only, for which a shareholder may sue derivatively but not individually.").

Few of Appellants' claims remain that may be asserted directly. As the bankruptcy court correctly noted, the duty of full disclosure belongs to members, not to the LLC. *Bartfield v. Murphy*, 578 F. Supp. 2d 638, 648 (S.D.N.Y. 2008) (citing *Salm v. Feldstein*, 799 N.Y.S.2d 104 (N.Y. App. Div. 2005)). Additionally, although the bankruptcy court noted a split of authority exists whether inadequate distributions in LLCs are direct or derivative actions, it declined to decide the question and assumed for the purposes of the opinion such an action could be brought directly. Given derivative actions were only recently afforded to members of an LLC, the issue has not been decided directly under New York law. However, *Tzolis* was premised on extending traditional derivative suits to LLCs, and maintaining the traditional distinction between direct and derivative actions. *Tzolis*, 884 N.E.2d at 1007-08. Under New York law, "a cause of action to compel the declaration

15

of a dividend is of a derivative nature, belonging to the corporation." *Matter of Goerler*, 227 A.D.2d 479 (N.Y. App. Div. 1996) (citing *Gordon v. Elliman*, 119 N.E.2d 331, 339 (N.Y. 1954)).

Regardless, the facts alleged in the SAC are insufficient to establish minority oppression. In order to make a claim of minority oppression, a plaintiff must establish "oppressive actions . . . that substantially defeat[] the 'reasonable expectations' held by minority shareholders in committing their capital to the particular enterprise." *Matter of Kemp & Beatley, Inc.*, 64 N.Y.2d 63, 72 (N.Y. 1984). As the Bankruptcy court correctly concluded, Appellants in this case alleged no facts supporting this claim. Indeed, other than conclusive legal claims, Appellants alleged no facts at all to support count five beyond the claims the Court has already dismissed as improperly pleaded derivative actions. There are no facts alleged describing expectations Prebul had with respect to disclosure nor what was inadequately disclosed and how it related to those expectations. Appellants attempt to side-step the argument on minority oppression and argue rather that DBS breached its fiduciary duty to Appellant to make full disclosure of all material facts. *See Salm*, 799 N.Y.S.2d at 105. However, Appellants' failure to plead any facts whatsoever surrounding the supposed nondisclosure dooms such a claim, because without allegations of fact sufficient to support the claim, the Court must dismiss it. *See Twobly*, 550 U.S. at 556.

Similarly, even if inadequate distributions were actionable as a direct claim under New York law, Appellants alleged no facts describing when funds were distributed, the amount of funds, and how they defeated Prebul's reasonable expectations. This is simply insufficient pleading under the *Twombly* standard, which requires a "plaintiff plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Twombly*, 550 U.S.

16

at 556. The bankruptcy court must be affirmed on count five.[3]

### C. New York's Limited Liability Company law

In Appellants' sixth count, they argue TSE should be dissolved pursuant to New York's Limited Liability Company Law that was in effect when TSE was established.[4] Section 701 required an LLC be dissolved within 180 days of a member's bankruptcy unless a majority vote is taken or the operating agreement contains a right to continue:

> A limited liability company is dissolved and its affairs shall be wound up upon the first to occur of the following:
> . . .
> (d) the bankruptcy . . . of any member . . . unless within one hundred eighty days after such event the limited liability company is continued either:
> (1) by the vote or written consent of the percentage in interest of the members or class or classes or group or groups of members stated in the operating agreement; or
> (2) if no such percentage is specified in the operating agreement, by the vote or written consent of a majority in interest of all of the remaining members; or
> (3) pursuant to a right to continue stated in the operating agreement . . . ."

It is undisputed no such vote occurred. However, before the bankruptcy court, Appellees argued[5]

---

[3] Appellees argued another ground before the bankruptcy court justifying dismissal on this point. Appellees argued, and restated this argument before the Court as an alternative ground for affirming the bankruptcy court, that TSE's operating agreement was an executory contract and the trustee's failure to assume it within sixty days of order of relief deems the contract rejected pursuant to 11 U.S.C. § 365(d)(1). Based on the pleadings, the bankruptcy court could not determine whether any affirmative duties on the part of Prebul were regularly required such that the contract could be considered executory. Because the court concludes Appellants failed to state a claim in count five, it need not address Appellees' alternative argument.

[4] Current § 701(b) contains the opposite presumption of the version in effect when TSE was formed. Section 701(b) now presumes an LLC will continue in spite of a member's bankruptcy. The current version was effective approximately two months after TSE was formed.

[5] Appellees repeat this argument before the Court in the alternative. Additionally, Appellees argue in the alternative, as discussed in footnote 4, TSE's operating agreement was an executory contract the trustee did not adopt within sixty days of the order of relief. Accordingly, Appellees reason, the operating agreement was breached and the trustee cannot assert dissolution rights associated with it. Finally, Appellees argue, if TSE is to be dissolved, the Limited Liability Company Law of New York effective when TSE was formed required dissolution proceedings be

17

count six should be dismissed because paragraph 18(a)(i) of the Operating Agreement contained a right to continue: "The Company shall be dissolved and its affairs wound-up upon . . . the expiration of the term of this Agreement, unless the Company is continued with the consent of all of the Members . . . ." (Court File No. 17-16, p. 73). The bankruptcy court concluded this was insufficient to show the agreement contained an override of § 701. Indeed, the court concluded, its reference to the "term of [the] Agreement," which as defined in the operating agreement includes dissolution "in accordance with the [Limited Liability Company Law of the State of New York]," seems to reinforce the application of New York's law.

The bankruptcy court, however, found a different ground for dismissing the dissolution claim. Section 541(c)(1)(B) of Title 11 renders inapplicable any *ipso facto* clauses. An *ipso facto* clause is a "provision in . . . applicable nonbankruptcy law . . . that is conditioned . . . on the commencement of a case under this title . . . and that effects or gives an option to effect a forfeiture, modification, or termination of the debtor's interest in property." The bankruptcy court held § 701 was rendered inapplicable here because it would modify or terminate Prebul's interest in TSE as a result of his bankruptcy. Under 11 U.S.C. § 363(l), the trustee is to succeed to all of Prebul's rights, including those as a member of TSE. To dissolve TSE as a result of Prebul's bankruptcy would deprive the trustee of that interest. *In re Dixie Mgmt. & Inv., Ltd. Partners*, 474 B.R. 698, 701 (Bankr. W.D. Ark. 2011) (holding a provision of the Arkansas Code similar to the provision at issue here unenforceable and noting § 363(l) "permit[s] [the debtor's] use and benefit of its interest in the LLC and [] the right to continue as a member of the LLC"). The bankruptcy court also cited *In re*

---

held in New York Supreme Court in the district in which the LLC's office is located, which in this case is in New York, New York. Because the Court concludes § 701 as effective when TSE was formed constituted an *ipso facto* clause, it does not address these arguments.

18

*Daugherty Cosntr., Inc.*, 188 B.R. 607, 611-12 (Bankr. D. Neb 1995), which held a similar provision unenforceable and noted

> [u]nder section 541(c)(1), provisions of Nebraska law and provisions of the LLC Articles and Agreements which purport to dissolve the LLCs and terminate the debtor's interest therein upon the commencement of a bankruptcy case are not enforceable in a Chapter 11 bankruptcy case. Under section 541(c)(1), debtor's membership in the two LLCs continues to exist, and it constitutes property of the bankruptcy estate. Furthermore, the two LLCs do not dissolve under state law because dissolution of the business enterprise is inconsistent with the Bankruptcy Code requirement of section 541(c)(1) that debtor's interest not be terminated by commencement of a bankruptcy case. As a matter of overriding federal law, the LLCs and debtor's interest therein continue to exist notwithstanding debtor's bankruptcy filing.

Appellants argue *Daugherty* was wrongly decided because it did not consider that LLCs continue to exist after dissolution for the purposes of winding up and liquidating. They rely on the *Daugherty* court's use of the word "terminate" in the above-quoted section and argue the interest survives in TSE's liquidated assets and so could not be considered "terminated." They cite instead *In re DeLuca*, 194 B.R. 79 (Bankr. E.D. Va. 1996), for the proposition that, because TSE itself is not in bankruptcy, giving effect to the agreement does not deprive Prebul of his interest in the company; that is, his right to receive distributions after TSE dissolves.

Under section 701 of New York's limited liability company law, as it existed at the creation of TSE, Prebul's interest in TSE would be modified from ownership in an operating entity to an interest in the liquidated assets of a dissolved entity solely due to his bankruptcy proceedings. Under § 541(c)(1)(B), such a provision is rendered inapplicable. Appellants' reliance on *DeLuca* and attempt to undermine *Daugherty* are unconvincing, because § 541 renders inapplicable termination or *modification* of an interest solely due to a debtor's bankruptcy. Whether Prebul would still have an interest in the liquidated assets is beside the point. Further, *DeLuca* dealt with

19

the application of the 11 U.S.C. § 365(e) exception to the bar on *ipso facto* clauses in executory contracts, which is inapplicable here.[6] New York's former Limited Liability Company Law, like the law held unenforceable in *Daugherty* and *Dixie Mgmt.*, required the dissolution of TSE upon Prebul's bankruptcy in contravention of the Bankruptcy Code. The bankruptcy court correctly concluded this was inconsistent with § 541 and held it inapplicable.

**IV. Conclusion**

For the foregoing reasons, the Court **AFFIRMS** the bankruptcy court's dismissal of Appellants' claims.

**An Order shall enter.**

/s/
**CURTIS L. COLLIER**
**UNITED STATES DISTRICT JUDGE**

---

[6] As noted above, the bankruptcy court assumed the operating agreement was not an executory contract. To make that determination required more evidence than was available in the pleadings and the court construed the facts in favor of the trustee. Regardless, because the dissolution here is predicated on the application of § 701, the Court must look to § 541, which deals with nonbankruptcy law. The executory contract provision of § 365 is inapplicable.